(125 So. 403)

## SOUTHERN RY. CO. et al. v. BAILEY.
### (2 Div. 930.)

Supreme Court of Alabama. Nov. 21, 1929.

Rehearing Denied Jan. 16, 1930.

R. B. Evins, of Birmingham, E. S. Jack, of Greensboro, and Pettus & Fuller, of Selma, for appellants.

386

Harsh & Harsh, of Birmingham, and Hobbs, Craig & Brown, of Selma, for appellee.

FOSTER, J. At a former trial of this case on the petition of the Southern Railway Company, a foreign corporation, an order was entered for its removal to the United States District Court on the ground that the circuit court sustained a demurrer to the evidence by the only resident defendant. On appeal to this court, referring to well-established principles, it was shown that the situation thus disclosed did not furnish sufficient justification for the removal, and the judgment was reversed. On another trial in the circuit court, a second petition for removal was presented. A denial of relief on that petition is here assigned as error. The latter petition for removal discloses that at the time the action was commenced plaintiff was a citizen and resident of Alabama, but that she has removed her residence and changed her citizenship, and is now a citizen of Mississippi, and, on account of the diversity of citizenship resulting from such change, defendant railway company has the right to remove this cause, and prays for an order to that effect.

It was settled many years ago by the Supreme Court of the United States that, to justify the removal of a cause from a state to federal court on account of diversity of citizenship, such diversity must exist at the beginning of the suit and also when the petition for removal was filed, and that the subsequent change of domicile by plaintiff from the state did not furnish justification for a removal of the cause on the petition of defendant. Gibson v. Bruce, 108 U. S. 561, 2 S. Ct. 873, 27 L. Ed. 825; Houston, etc., Ry. Co. v. Shirley, 111 U. S. 358, 4 S. Ct. 472, 28 L. Ed. 455; Mansfield, etc., Ry. Co. v. Swan, 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462; Smith v. Akers, 117 U. S. 197, 6 S. Ct. 669, 29 L. Ed. 888; Stevens v. Nichols, 130 U. S. 230, 9 S. Ct. 518, 32 L. Ed. 914; Jackson v. Allen, 132 U. S. 27, 10 S. Ct. 9, 33 L. Ed. 249; Kellam v. Keith, 144 U. S. 568, 12 S. Ct. 922, 36 L. Ed. 544, and many citations from state courts noted 28 USCA § 71, p. 183, not necessary to repeat.

Since the petition shows that plaintiff was a citizen of Alabama when the suit was brought, it appears on its face that petitioner was not entitled to a removal, though plaintiff may have changed her domicile. It seems also that the right of defendants, when there is no separable controversy or fraud in joining a resident defendant, to remove a case on account of diversity of citizenship, depends upon the fact that all of the defendants are nonresidents of the state (Lee v. Chesapeake & Ohio Ry. Co., 260 U. S. 653, 43 S. Ct. 230, 67 L. Ed. 443; Martin v. Snyder, 148 U. S. 663, 13 S. Ct. 706, 37 L. Ed. 602; 2 Foster Fed. Prac. [6th Ed.] § 71, pp. 2895, 2896; Judicial Code, tit. 28, USCA, and notes on page 356, § 71); and in such event all defendants must unite in the application for removal. (2 Foster, Fed. Prac. (6th Ed.) 2896; Fletcher v. Hamlet, 116 U. S. 408, 6 S. Ct. 426, 29 L. Ed. 679; Chicago, etc., Ry. Co. v. Martin, 178 U. S. 245, 20 S. Ct. 854, 44 L. Ed. 1055). There was a defendant in this case who was a citizen of Alabama, and who did not join in the petition.

The petition for removal by the Southern Railway Company we conclude was therefore properly denied.

There was no prejudicial error in refusing to require plaintiff to give security for costs on account of her alleged change of residence from Alabama, because the record shows that, after such ruling she voluntarily gave such security.

Some of the charges refused appellant direct a verdict for defendant if the jury is reasonably satisfied that the engine which may have emitted the sparks which set the fire to plaintiff's gin was properly equipped and constructed and operated on the occasion. It appears that the basis of their refusal is the omission to hypothesize a proper condition of repair in respect to the equipment of the engine. The court charged the jury that the burden was on defendant to show a proper condition of repair as well as a proper equipment, construction, and operation. It seems to be the impression that "proper equipment" does not include the idea that the equipment is in proper condition. In some cases the rule is stated that the burden is on defendant in cases of the nature here involved, after the prima facie right is shown, to reasonably satisfy "the jury of the proper construction, equipment, condition and operation of the engine." Pettus v. L. & N. R. R. Co., 214 Ala. 187, 106 So. 807; Wilson v. R. R. Co., 207 Ala. 171, 92 So. 246; L. & N. R. R. Co. v. Davis, 200 Ala. 219, 75 So. 977.

In other cases the rule is stated to be that the three requisites are "(1) proper construction; (2) proper equipment; and (3) proper management or operation." Douglass v. Cent. of Ga. Ry. Co., 201 Ala. 395, 78 So. 457, 458; L. & N. R. R. Co. v. Reese, 85 Ala. 497, 5 So. 283, 7 Am. St. Rep. 66.

■ Certainly proper condition of repair of the equipment must be shown by defendant. In the recent case of Goodgame v. L. & N. R. R. Co., 218 Ala. 507, 119 So. 218, we held that it was not error to give a charge of import similar to those now being considered. Improper equipment embraces the two ideas, (1) the nature of the appliances; and (2) their condition of repair. We do not think, therefore, there is any fault in a statement of the rule which says nothing expressly as to the state of repair, but does expressly require proper equipment. The equipment cannot be said to be proper if it is in bad condition. As we stated, therefore, in the case of Goodgame v. L. & N. R. R. Co., supra, the giving of such a charge is not error.

■ We have now the question of whether a refusal to give it is error. We are led to the conclusion that its refusal is not error when the court has fully given to the jury a correct statement of the law pertaining to the subject as was done by the circuit judge in the instant case. The giving of the charges may under some circumstances tend to mislead the jury, as where there has been some contention that the burden does not extend to the state of repair of the equipment. McCary v. A. G. S. R. R. Co., 182 Ala. 597 (charge 13, p. 613), 62 So. 18.

We have here referred only to the principles of law argued in appellants' brief as applicable to the charges referred to. They may be otherwise faulty, as argued for appellee, but we have not otherwise considered them.

The fire in which plaintiff's ginhouse and machinery were burned is alleged to have occurred in July, 1924. Appellee proved by a witness that she built the ginhouse in 1911, and then owned stock in the company which constructed the plant. Appellant then offered to prove by the witness the amount of the cost new of such plant, including the buildings and machinery, immediately after they were completed in 1911. The court sustained objection to this testimony. It was stated that the witness would testify that the cost was $7,000. Plaintiff had offered evidence that at the time of the fire it was worth $17,000 to $18,000, and that much new machinery had been added, and its nature and cost. Appellant claims that evidence of the cost in 1911 should have been received by the court.

■ As a general proposition, the price paid for an article is admitted as some evidence of its value. 2 Jones on Ev. (2d Ed.) § 704, p. 1320; Warrant Warehouse Co. v. Cook, 209 Ala. 60, 95 So. 282; Hill Gro. Co. v. Caldwell,

211 Ala. 34, 99 So. 354. But it also is said by this authority that, "in order that the price paid may be evidence of its value, it must be shown that such price was paid within a reasonable time before or after the time with reference to which its value is to be ascertained." 2 Jones on Ev. p. 1321; Hensley v. Orendorff, 152 Ala. 599, 44 So. 869.

There have occurred in many opinions of the courts throughout the country divergent applications of the rule. They are shown in the notes in 2 Jones on Ev., supra, and 22 C. J. 184.

In the case of Standard Oil Co. v. So. Pac. R. R. Co., 268 U. S. 146, 45 S. Ct. 465, 467, 69 L. Ed. 890, in connection with the valuation of a vessel lost at sea, the United States Supreme Court makes the following observations: "It is fundamental in the law of damages that the injured party is entitled to compensation for the loss sustained. Where property is destroyed by wrongful act, the owner is entitled to its money equivalent, and thereby to be put in as good position pecuniarily as if his property had not been destroyed. In case of total loss of a vessel, the measure of damages is its market value, if it has a market value, at the time of destruction. The Baltimore, 8 Wall. 377, 385, 19 L. Ed. 463. Where there is no market value such as is established by contemporaneous sales of like property in the way of ordinary business, as in the case of merchandise bought and sold in the market, other evidence is resorted to. The value of the vessel lost properly may be taken to be the sum which, considering all the circumstances, probably could have been obtained for her on the date of the collision; that is, the sum that in all probability would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy. Brooks-Scanlon Corporation v. United States, 265 U. S. 106, 123, 44 S. Ct. 471, 68 L. Ed. 934. And by numerous decisions of this court it is firmly established that the cost of reproduction as of the date of valuation constitutes evidence properly to be considered in the ascertainment of value. Southwestern Bell Telephone Co. v. Public Service Commission, 262 U. S. 276, 287, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807, and cases cited; Bluefield Co. v. Public Service Commission, 262 U. S. 679, 689, 43 S. Ct. 675, 67 L. Ed. 1176; Georgia Ry. & Power Co. v. Railroad Commission, 262 U. S. 625, 629, 43 S. Ct. 680, 67 L. Ed. 1144; Brooks-Scanlon Corporation v. U. S., supra, [265 U. S.] 125, 44 S. Ct. 471 [68 L. Ed. 934]; Ohio Utilities Co. v. Public Utilities Commission, * * * 267 U. S. 359, 45 S. Ct. 259, 69 L. Ed. 656. The same rule is applied in England. In re Mersey Docks and Admiralty Commissioners, [1920] 3 K. B. 223; Toronto City Corporation v. Toronto Railway Corporation, [1925] A. C. 177, 191. It is to be borne in mind that value is the thing to be

found, and that neither cost of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts. Minnesota Rate Cases, 230. U. S. 352, 434, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18."

The following is also quoted by that court from The Clyde, 1 Swabey, 23: " 'In order to ascertain this, there are various species of evidence that may be resorted to—for instance, *the value of the vessel when built* [italics supplied]. But that is only one species of evidence, because the value may furnish a very inferior criterion whereby to ascertain the value at the moment of destruction. The length of time during which the vessel has been used, and the degree of deterioration suffered, will affect the original price at which the vessel was built. But there is another matter infinitely more important than this—known even to the most unlearned—the constant change which takes place in the market. It is the market price which the court looks to, and nothing else, as the value of the property. It is an old saying, "The worth of a thing is the price it will bring." ' and see City of Winona v. Wisconsin-Minnesota Light & Power Co. (D. C.) 276 F. 996, 1003."

The court then proceeds to express its conclusion as follows: " 'Restitutio in integrum' is *the leading maxim applied by admiralty courts* to ascertain damages resulting from a collision (The Baltimore, supra, 385), and, on the same principle, value is the measure of compensation in case of total loss. The evidence requires a finding that, as of the date of her loss, the cost of reproduction new of the Proteus was not less than $1,750,000. Ordinarily, contemporaneous cost of construction would be a good indication of the amount of damages resulting from the loss of a new ship. There ought not to be any difference between reasonable original cost and estimated cost of reproduction as of the date when built. But the Proteus was 18 years old when lost, and all the witnesses who testified on the subject fixed her value at that time higher than her original cost and lower than the estimated cost of construction."

The vessel was built in 1900, at a cost of $557,600, and in 1909 was improved, costing $90,000. She was lost at sea in 1918. The court considered its cost in 1900 as some evidence, though a poor criterion of its value in 1918, and fixed its value at that time at a sum largely in excess of its cost 18 years before its loss.

In the case of Smyth v. Ames, 169 U. S. 466, 547, 18 S. Ct. 418, 42 L. Ed. 819, the United States Supreme Court also declares that, to ascertain value, "the present as com-

pared with the original cost of construction" are among many other things matters for consideration. Likewise in McCardle v. Indianapolis Water Co., 272 U. S. 400, 47 S. Ct. 144, 71 L. Ed. 316, it is shown that, while such original cost may not be of much value, dependent upon the facts, it is recognized as one of the elements to be considered, for what it is worth.

The rule is also frequently stated as follows: "Where the value of the property destroyed is the criterion of the amount of damages to be awarded and the property destroyed has no market value at the place of its destruction, then all pertinent facts and circumstances are admissible in evidence that tend to establish its real and ordinary value at the time of its destruction, such facts as will furnish the jury, who alone determine the amount, with such relevant data as will enable them reasonably and intelligently to arrive at a fair value; to this end the *original cost of the property* [italics supplied], the manner in which it had been used, its general condition and quality and percentage of its depreciation * * * from use, damage, decay or otherwise, are all elements of proof to be submitted to the jury to aid them in ascertaining its value." Laubaugh v. Penn. R. Co., 28 Pa. Super. Ct. 247; Jacksonville R. Co. v. Land Co., 27 Fla. 1, 157, 9 So. 661, 17 L. R. A. 33, 65; Watt v. Nev. Cent. R. R. Co., 23 Nev. 154, 44 P. 423, 46 P. 52, 726, 62 Am. St. Rep. 772; Sutherland on Damages (3d Ed.) 445.

In determining the amount of the loss sustained by the destruction of property, regard is often given to its actual or historical cost. The question of whether such cost is helpful in that connection we think is affected by the nature of the property, whether it has a market value at the time of the inquiry, whether the evidence is primary or rebuttal in nature, whether the property is easy or difficult to value, the extent of its use and deterioration, the date of its acquisition, changes in price levels, and the like. The circumstances of each case should control. The authorities seem to make its admissibility largely a matter of judicial discretion.

■ This court in consultation has given careful and deliberate consideration to the facts shown on this appeal, and has concluded that the cost price of the gin plant as proposed to be shown by appellant may in rebuttal shed some light upon the worth of plaintiff's evidence as to the present value of the plant. In reaching this conclusion, it is mindful of the length of time which has intervened, but has considered the fact that there is a great difference between the cost, as proposed to be proven and plaintiff's evidence of its value when destroyed, and that it is not shown to have a market value. It should be considered in connection with the extent to which the gin plant has been used and worn,

and such replacements and additions as may have been made, and its state of repair, and changes in price levels since its purchase, and the like, if evidence as to such matters is offered on another trial. It may or may not be of much worth in ascertaining the value at the moment of destruction. But its value as evidence is to be weighed by the jury. The court has therefore concluded that there was reversible error in this respect.

As the judgment must be reversed for the reason just stated, we do not think it necessary to treat the other assignments of error not herein discussed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.